**Sabir Abdol Ahkeem AKBAR a/k/a Freddie Lee Hayes, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 11–83–073–CR.

Court of Appeals of Texas, Eastland.

June 23, 1983.

Blake Withrow, Withrow & Huff, Dallas, for appellant.

Henry Wade, Criminal Dist. Atty., Dallas, for appellee.

RALEIGH BROWN, Justice.

Appellant was indicted for attempted murder. He appeals from a conviction of the lesser included offense of aggravated assault. TEX.PENAL CODE ANN. sec.

22.02(a)(1) (Vernon 1979). The punishment, enhanced, was assessed at confinement in the Texas Department of Corrections for 20 years and a fine of $10,000.

In three grounds of error, appellant: (1) challenges the sufficiency of the evidence to support the conviction; (2) contends that the court erred in failing to charge the jury on the law of simple assault; and (3) urges that there was a failure to comply with the interstate compact on detainer.

■ The thrust of appellant's first ground of error is that there was no showing of "serious bodily injury" within the meaning of TEX.PENAL CODE ANN. sec. 1.07(a)(34) (Vernon 1979)[1] to aggravate the assault to a felony under TEX.PENAL CODE ANN. sec. 22.02(a)(1) (Vernon 1979).[2]

We must determine whether the evidence justified the jury's inference that the victim received a bodily injury that created a substantial risk of death. It is well settled that the evidence must be viewed in the light most favorable to the jury's verdict.

The victim and the investigating police officer were the only witnesses to give testimony as to the victim's injuries.

The victim testified in part:

Q So he was hitting you about the chest area with his fists; is that right?

A Yes, sir, he did.

Q And then what happened? Were you trying to defend yourself?

A I was trying to defend myself and I was trying to get away and at the same time, I still mentioned any names that we both knew and that infuriated him.

Q After he was hitting you with the fists, then what happened?

A Then he went to choke me.

Q Tell the members of the jury about that.

1. "Serious bodily injury" means *bodily injury that creates a substantial risk of death* or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. (Emphasis added)

2. (a) A person commits an offense if he commits assault as defined in Section 22.01 of this code and he:

(1) *causes serious bodily injury* to another, including his spouse. . . . (Emphasis added)

A The first attempt to choke me was with a towel, in which case it was all the way around my neck, and like that.

Q Were you trying to run away from him and he grabbed a towel?

A There was a moment that I was trying to get away.

\* \* \* \* \* \*

Q What did he do with the towel? Would you tell the members of the jury?

A He tried to kill me.

\* \* \* \* \* \*

A After he had the towel around my neck, then he forced my weight with the towel around my neck up against the wall.

\* \* \* \* \* \*

Q What happened after he slung you up against the wall with the towel around you?

A It was more of a fight, more fist fighting, in which case he put his leg on me on the couch and his knee on me, so I couldn't move, and was still hitting me in this area. And then he took a belt off and tried to choke me with that.

Q Would you tell the members of the jury about that?

A I was leaning on the couch with his knee in my chest, with his belt off around like this and I had my hand around the belt like this and I almost blacked out.

Q What was he doing with his hands on the belt?

A Stretching it, trying to choke the life out of me.

Q Did you almost black out at that point?

A Yes, sir, I did.

\* \* \* \* \* \*

Q He was trying to kill you?

A I mentioned to him that he was killing me and he said, "Fine. I'm trying to kill you."

Q You said, "You're killing me." And he said, "Fine."?

A "I'm trying to kill you."

\* \* \* \* \* \*

Q Did he ever try and choke you with just his hands?

A Yes.

Q Was that after the belt?

A After the towel, after the belt. Then he tried with the hands.

The investigating police officer testified that there were large bruises and red marks around her neck and arms. He could see fingerprints on her throat as well as large bruises and red marks where some object had been around her throat. From his experience, the injuries were consistent with people that have been "strangled."

There was no medical testimony nor other testimony that any medical assistance was sought or was necessary. Also, there was no evidence of bodily injury causing death, serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. However, "strangle" is defined in Webster's Third New International Dictionary (unabridged) as: "to compress the windpipe of until death results from stoppage of respiration: choke to death by compressing the throat with or as if with a hand or rope."

The court in *Morales v. State,* 633 S.W.2d 866 (Tex.Cr.App.1982) said:

Although we cannot ascribe to common knowledge medical knowledge such as the position and function of the jugular vein and carotid artery, it is certainly common knowledge that the throat is a particularly vulnerable part of the body, as exemplified by the popular expression "go for the throat."

From the evidence in the instant case since the victim was strangled to the point of "near blackout," we hold that the jury could draw the inference that her injuries created a substantial risk of death.

Viewing the evidence in the light most favorable to the jury's verdict, we hold the evidence is sufficient to support the convic-

tion. *Simmons v. State,* 622 S.W.2d 111 (Tex.Cr.App.1981); *Drager v. State,* 548 S.W.2d 890 (Tex.Cr.App.1977). The first ground of error is overruled.

■ As to the ground of error complaining of the court's charge, we are guided by *Johnson v. State,* 623 S.W.2d 654 (Tex.Cr. App.1981) which said:

> In determining whether a charge on a lesser included offense is required, a two-step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Watson v. State,* 605 S.W.2d 877 (Tex.Cr.App.); *Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.).

Appellant did not testify, nor did he present any evidence at trial. From our examination of the record, we conclude that the evidence at trial established that if guilty at all, appellant was guilty of the charged offense of attempted murder or the lesser included offense of aggravated assault. No error is shown in the trial court's refusal to charge on the lesser included offense of simple assault. The second ground of error is overruled.

■ In his last ground of error, appellant contends that the state failed to comply with the Interstate Agreement on Detainer, TEX.CODE CRIM.PRO.ANN. art. 51.14 (Vernon 1979), because he was not tried within 120 days of his arrival in the state. His motion to dismiss for failure to provide a speedy trial urged that such motion should have been granted because of the state's failure to provide a speedy trial within 180 days.

The court in *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978) said:

> It is well settled that the ground of error presented on appeal must comport with the objection raised at trial; otherwise, nothing is presented for review. *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr.App. 1978); *Graham v. State,* 546 S.W.2d 605 (Tex.Cr.App.1977).

■ Appellant's ground of error fails to comport with his objection raised at trial. Moreover, there was good cause for a continuance as authorized by the Interstate Agreement on Detainer. This cause is a re-indictment of an earlier case in which appellant's Detainer Agreement motion was filed. The motion was transferred by agreement to this cause along with the state's announcement of ready and the docket sheet reflection of all continuances requested by appellant. The Interstate Agreement on Detainer Act as the Speedy Trial Act should be construed as being aimed at prosecutorial delay. The court in *Durrough v. State,* 620 S.W.2d 134 (Tex.Cr. App.1981) said:

> (W)e hold that the periods of delay resulting from continuances in the previous cause granted at the request of the defendant were excluded properly from the computation of time in the subsequent cause.

The third ground of error is overruled.

The judgment is affirmed.