*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## MEMORANDUM OPINION

No. 04-07-00741-CR

Alfredo Murillo **CHAVEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 112th Judicial District Court, Sutton County, Texas
Trial Court No. 1999
Honorable Pedro Gomez, Jr., Judge Presiding

Opinion by:   Catherine Stone, Justice

Sitting:   Catherine Stone, Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:   November 26, 2008

AFFIRMED

Alfredo Murillo Chavez was found guilty of aggravated assault against a public servant. The jury assessed punishment of 70 years in prison. On appeal, Chavez contends the evidence is legally and factually insufficient to support the verdict; the trial court violated his constitutional right to due process when it denied his motion for continuance and failed to provide him an opportunity to hire his own expert to examine him and review the court-appointed expert's results; and the trial court

abused its discretion when it ordered him to be shackled during proceedings without adequate cause. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June of 2006, jailer Robert Hartman entered Chavez's cell to retrieve a tub of water. As Hartman bent down to get the tub, he saw Chavez's feet come towards him and he was attacked. Hartman was beaten and strangled until he lost consciousness. Chavez was indicted for aggravated assault against a public servant. After a change of venue and an agreed mistrial in Crockett County, Chavez was tried in Reagan County. The jury found Chavez guilty of the crime. After Chavez pleaded "true" to an enhancement charge, the jury assessed punishment of 70 years in prison. This appeal followed.

## LEGAL AND FACTUAL SUFFICIENCY CHALLENGES

In his first two issues, Chavez complains that the evidence is legally and factually insufficient to support the guilty verdict. He argues the State failed to prove beyond a reasonable doubt that Hartman suffered serious bodily injury as defined in the Penal Code, the evidence is "so weak" that the verdict seems "clearly wrong and manifestly unjust," and the great weight and preponderance of the evidence conflicts with the verdict.

When considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all of the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Hernandez v. State*, 198 S.W.3d 257, 260 (Tex. App.—San Antonio 2006, pet. ref'd). We affirm the trial court's judgment if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). When considering a factual sufficiency challenge, we view all the evidence in a neutral light

and set aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The jury evaluates the credibility and demeanor of witnesses and determines the weight afforded contradicting testimony. *Stogiera v. State,* 191 S.W.3d 194, 196 (Tex. App.—San Antonio 2005, no pet.).

The offense of aggravated assault against a public servant requires the State to prove beyond a reasonable doubt that a person (1) intentionally, knowingly, or recklessly (2) caused serious bodily injury (3) against a person the actor knew was a public servant (4) while the public servant was lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon 2007). The only element of the crime Chavez contests is the requirement of "serious bodily injury." Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07 (Vernon 2003). Chavez argues that the evidence was legally insufficient to support the jury verdict because the State failed to prove that Hartman's injuries met the statutory requirements. We disagree.

Hartman testified that on the night of the incident, he had taken Chavez a tub of hot water and Epsom salts to treat a foot injury. Later that night he went back to Chavez's cell to collect the tub. When he bent down to pick up the tub, Hartman saw Chavez's leg come toward him, and Chavez started hitting Hartman with his fists. Hartman stated that after Chavez hit him several times, he got Hartman in a choke hold. He struggled to free himself from Chavez, but ended up losing consciousness. Jerry Hennington, an inmate who witnessed part of the incident, testified that when he approached the cell he observed Hartman lying face down on the floor with blood around

him, and Chavez had Hartman in a choke hold. As another inmate led Hennington away from the cell, he could hear Chavez continuing to punch Hartman.

As a result of the incident, Hartman suffered bruising and lacerations, an eye that was swollen shut, and a fractured maxillary bone. In addition, Chavez strangled Hartman with enough force that he broke Hartman's hyoid bone, a bone in the throat that protects breathing and is difficult to break. Hartman ultimately lost four teeth, and his voice was adversely affected in that he lost vocal strength and the ability to sing with the same range as before the attack. Medical testimony revealed that while the injuries Hartman received were not life-threatening, a substantial risk of death existed when Hartman was strangled to unconsciousness, as he could have asphyxiated in that situation. Therefore, the "serious bodily injury" requirement is met, and a rational trier of fact could have found Chavez guilty of all elements of the crime beyond a reasonable doubt. *See McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App.1997).

Chavez also challenges the factual sufficiency of the evidence, arguing that when viewing the evidence in a neutral light, it was factually insufficient on two bases: first, that the State did not prove Chavez was the attacker, and second, that Hartman's injuries did not rise to the level of serious bodily injury. We disagree with both contentions.

Chavez states that Hartman did not see his attacker; rather, that he only saw "a leg" coming at him. He also argues that Timothy Holt, the other inmate jailed in Chavez's cell block, could have been the attacker. Chavez pointed out that other inmates saw Holt shirtless, but by the time the officers entered the jail, he was wearing a clean white shirt. In addition, Chavez contends that a bloody smock recovered from his cell was actually Holt's. However, Hartman testified that when he entered Chavez's cell, Chavez was the only person in the unlocked cell. When asked if he saw

Holt, Hartman said no. Hartman stated that he bent down to pick up the tub, saw Chavez's leg coming at him, and felt the beating begin. Hartman stated, "Nobody else could have gotten in behind me," even though the cell door was unlocked. In addition, Hennington testified that he saw Chavez restraining Hartman in a choke hold, and several photographs were entered into evidence showing blood on Chavez's clothing, arms, and hands. Although Chavez's arguments may undermine the weight of the evidence against him, reconciling conflicts in the evidence is within the exclusive province of the fact finder. *See Whitaker v. State,* 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). Consequently, the evidence was factually sufficient to support the finding that Chavez was the attacker.

Chavez's argument that the "serious bodily injury" requirement was not met is based on the points made in the legal sufficiency challenge; he contends the evidence was "so weak" that it makes a guilty conviction "clearly and manifestly" unjust. However, several of our sister courts have found that choking to a point of unconsciousness meets the requirement for "substantial risk of death." *See Akbar v. State,* 660 S.W.2d 834, 836 (Tex. App.—Eastland, 1983) (holding that when a victim was strangled to the point of "near blackout," a jury could draw the inference that her injuries created a substantial risk of death); *see also In re J.A.P.,* No. 03-02-00112-CV, 2002 WL 31317256, at *4 (Tex. App.—Austin 2002, no pet.) (not designated for publication) ("Because we hold that a rational trier of fact could have found beyond a reasonable doubt that J.A.P.'s act of choking the complainant created a substantial risk of death, this conduct threatened serious bodily injury . . . ."); *Kaufman v. State,* No. 13-01-507-CR, 2002 WL 34230974, at *2 (Tex. App.—Corpus Christi 2002, no pet.) (not designated for publication) (stating that evidence leading to a verdict based on choking inferring a substantial risk of death was "not so weak that it undermined the jury's determination, [nor was it] greatly outweighed by contrary proof"). Accordingly, we hold the evidence is legally and factually

sufficient to support appellant's conviction for aggravated assault. Chavez's first and second issues are overruled.

## MOTION FOR CONTINUANCE

In his third issue, Chavez argues that the trial court violated his federal and state constitutional rights to due process and a fair trial when it denied his motion for a continuance after he gave notice of an insanity defense. We review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). "To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion." *Id.*

When a defendant raises his sanity as an issue at trial, due process requires the State "assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake v. Oklahoma,* 470 U.S. 68, 83 (1985). A defendant has a right to be examined by an expert, as well as the right to have an expert appointed to assist in his defense. *De Freece v. State,* 848 S.W.2d 150, 159 (Tex. Crim. App. 1993). "If a defendant wishes to be examined by an expert of the defendant's own choice, the court on timely request shall provide the examiner with reasonable opportunity to examine the defendant." CODE CRIM. PROC. ANN. art. 46C.107 (Vernon 2005). The court abuses its discretion if it fails to appoint an expert or to give prior approval for expenses for defense counsel to obtain an expert to assist in the evaluation, preparation, and presentation of an insanity defense, if insanity will be a significant factor at trial. *De Freece*, 848 S.W.2d at 159.

On August 13, 2007, Chavez gave notice to the State of his intention to use insanity as a defense. At that time, the trial was set to begin September 5, twenty-three days from the date of the notice. On August 14, the State filed a motion to have Chavez undergo a psychological evaluation.

The State contacted Dr. Jarvis Wright to conduct the exam, and asked the court to appoint Dr. Wright.[1]  On August 17, Chavez filed a motion requesting a continuance so that he could secure the necessary money and hire his own expert witness, as the State had hired the expert witness Chavez planned on using.  On August 20, the court held a hearing on the continuance motion.  At the hearing, Chavez stated that he needed approximately two more weeks to gather the money needed to hire an expert.  The court denied the continuance.

On August 29, Dr. Wright examined Chavez; the next day, Chavez filed a motion withdrawing the insanity defense.  On September 6, the court sealed the results of the examination conducted by Dr. Wright.  Chavez now claims that the trial court denied his due process rights when it denied his motion for a continuance so that he could obtain funds to hire his own expert to perform an examination.

We conclude, the trial court did not abuse its discretion in denying Chavez's motion for a continuance.   After Chavez gave timely notice to the State that he would be raising an insanity defense, the State contacted Dr. Wright to examine Chavez; the trial court subsequently appointed Dr. Wright and required him to testify at any hearing or trial on the issue of Chavez's sanity.   The State provided Chavez with an examination, even though there is no evidence on the record that insanity was going to be a significant factor in the trial.  *See De Freece*, 848 S.W.2d at 159. In addition, the expert appointed was the same expert Chavez claims he intended to hire initially; therefore, Chavez cannot object to Dr. Wright's qualifications.

After Chavez was examined by Dr. Wright, he filed a motion withdrawing the insanity defense.  The initial trial commenced, and the record reflects that on the day the agreed mistrial was

---

[1] The order appointing  Dr. Wright was not entered until after Chavez had already been evaluated.  On August 30, 2007, the court entered an order *sua sponte* appointing Dr. Wright to examine Chavez, and requiring the doctor to testify at any hearing or trial on the issue of insanity.

declared, the trial court stated that it reviewed the report filed by Dr. Wright, and that the trial court would refrain from giving the report to the State, further protecting Chavez's interests. Chavez then made a motion to seal the record, which was granted. At no point did Chavez make a showing that he was prejudiced by the trial court's denial of his motion for a continuance. Consequently, Chavez's third issue is overruled.

## Due Process Violation

In his fourth issue, Chavez argues that the trial court violated Article 46C.107 of the Texas Code of Criminal Procedure. This statute states: "If a defendant wishes to be examined by an expert of the defendant's own choice, the court on timely request shall provide the examiner with reasonable opportunity to examine the defendant." Tex. Code Crim. Proc. Ann. art. 46C.107 (Vernon 2005).

However, Chavez effectively waived his objection to the denial of the motion for continuance when he withdrew the insanity defense. *See Norton v. State*, 930 S.W.2d 101, 109 (Tex. App.—Amarillo 1996, pet. ref'd) (holding that appellant waived his objection to the trial court's failure to appoint an expert when he withdrew his insanity defense). In addition, because of the continuance granted between the initial mistrial in September and the actual trial in October, Chavez did in fact have time to find and hire an expert. Chavez could have reentered a notice regarding use of the insanity defense, and challenged the denial of a motion for continuance. Instead, the issue was never raised at any point following the September mistrial. Consequently, we find no error on the trial court's part. Chavez's fourth issue is overruled.

## SHACKLING IN THE COURTROOM

In his fifth issue, Chavez argues the trial court abused its discretion when it ordered him to be shackled during trial proceedings, and when it overruled Chavez's motion for mistrial after a juror saw him in the shackles. The Texas Court of Criminal Appeals has held the following:

> The harm a defendant suffers when the jury sees him in handcuffs or shackles is that his constitutional presumption of innocence is infringed, and all efforts should be maintained to prevent the jury from seeing the defendant in shackles, except where there has been a showing of exceptional circumstances or a manifest need for such restraint. It is within the discretion of the trial judge as to whether a defendant shall be tried in handcuffs or shackles. On appeal, the appellate court determines whether the trial court abused its discretion by requiring the defendant to appear in restraints. To assist the appellate court in this determination, the record must clearly and affirmatively reflect the trial judge's reasons therefor.

*Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991) (citations omitted). Therefore, we first look to whether the trial court abused its discretion in ordering Chavez shackled, and then determine whether any error found was harmless.

The trial court ordered Chavez to be shackled during both his initial trial in Crockett County, and the subsequent trial in Reagan County. Chavez's attorney objected to the use of the ankle shackles during the Crockett County trial; the trial court responded by stating, "[F]or security reasons, the sheriff and court at this time believe that it is necessary to have those shackles on there." Though there was an agreed mistrial, the trial court took steps to prevent the jury from seeing the shackles by placing cardboard around both counsel tables.

Chavez was again shackled at the ankles for the trial in Reagan County. Chavez raised the issue again after claiming that a juror had seen him shackled as he was led from the detention center across the street to the courthouse following a lunch break. Chavez moved for mistrial, and repeated his motion to remove the shackles. He argued there was sufficient security and officers in the courtroom such that the shackles were not needed. After hearing argument from both sides, the trial

court noted that it was doing everything it could to make sure Chavez was brought over from the detention center early enough to avoid sightings by jurors, and that it would increase its vigilance in doing so; however, it denied Chavez's motions for mistrial and to remove the shackles.

It is within the trial court's discretion whether to order a defendant be shackled during trial; however, the reasons for the shackling must be clearly reflected in the record. *Id.* In addition, the crime for which the defendant is charged or general courtroom security reasons are not enough to warrant shackling; there must be exceptional, case-sufficient circumstances. *See id.*; *Boone v. State*, 230 S.W.3d 907, 911 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Gammage v. State,* 630 S.W.2d 309, 313-14 (Tex. App.—San Antonio 1982, pet. ref'd)) (providing examples of exceptional circumstances which have warranted shackling during trial).[2] Here, while the trial court stated that the shackling was for security reasons during the first trial, nothing was said on the record during the second trial which supported the trial court's determination that Chavez should be shackled throughout the trial. Therefore, we hold the trial court erred in ordering Chavez shackled throughout his trial.

We must now perform a harm analysis to determine whether the trial court's error constituted reversible error. "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The Texas Court of Criminal Appeals has provided factors courts are to consider when deciding whether a constitutional error is harmless;

---

[2] Examples given include: "situations in which an accused has expressed an intent to escape, made threats of physical violence, resisted being brought into court, repeatedly interrupted court proceedings, attempted to leave the courtroom, assaulted persons in court, behaved in an unruly manner in court, or engaged in or threatened non-conforming conduct." *Boone*, 230 S.W.3d at 911 (citing *Gammage*, 630 S.W.2d at 313–14).

these include the source of the error, the nature of the error, its likely collateral implications, and how much weight a juror would probably place upon the error. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Cr. App. 1989). In addition, shackling is harmless error if the jury cannot see the shackles, and if the shackles do not restrict the defendant's ability to communicate with his attorneys. *Canales v. State*, 98 S.W.3d 690, 697–98 (Tex. Crim. App. 2003); *Davis*, 195 S.W.3d at 317–18.

We believe the trial court's error in ordering Chavez to be shackled throughout the trial, without providing evidence on the record of exceptional circumstances, constituted harmless error. In the first trial, the court indicated there were security concerns; while that in itself does not provide enough reason for shackling Chavez, it can be considered when evaluating the source and nature of the error. *See Harris*, 790 S.W.2d at 587. In addition, while Chavez complained on the record that a juror had seen him during the lunch break, there is no evidence supporting the claim. Even if the sighting in fact occurred, it was an inadvertent sighting outside of the courtroom, despite the fact that the court had taken measures to ensure Chavez was not seen while being brought over to the courthouse. Nothing in the record reflects that the jurors inside the courtroom saw that Chavez was shackled, or that the shackling had any effect on the jury or its consideration of the case. Finally, Chavez did not complain that the shackling prevented him from communicating effectively with his attorneys. Therefore, without evidence that the jury saw the shackles or that the shackling contributed to Chavez's conviction, the trial court's error was harmless and does not warrant reversal. Chavez's fifth issue is overruled.

## CONCLUSION

The evidence is legally and factually sufficient to support the verdict against Chavez. In addition, his due process rights were not violated when the trial court failed to grant his requested continuance so that he might have additional time to find his own expert. Finally, while the trial

court improperly ordered Chavez shackled during the trial, the error was harmless and thus does not warrant reversal of the verdict.   Accordingly, we affirm the judgment of the trial court.


Catherine Stone, Justice

Do Not Publish