Opinion filed June 7, 2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00308-CR

                                                    __________

 

                       JACK
MAXWELL COMEAUX, JR., Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 82nd District Court

 

                                                             Falls
County, Texas

 

                                                       Trial
Court Cause No. 8707

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
grand jury indicted Jack Maxwell Comeaux, Jr. for one count of aggravated
assault against Garrett Lance.  Appellant pleaded not guilty and was tried
before a jury, which found him guilty.  The trial court assessed a punishment
of fifteen years in the Institutional Division of the Texas Department of Criminal
Justice.  We affirm.

            Jeff
Wachtendorf was a trooper with the Texas Department of Public Safety stationed
in Falls County, Texas, in 2009.  While on patrol in the county in the evening on
January 17, 2009, he received “a call of a vehicle that was on three tires
doing donuts . . . in the middle of the road.”  Trooper Wachtendorf eventually
found a Ford Ranger on the side of the road with the left front tire missing. 
When Trooper Wachtendorf parked behind the pickup, four young men, one of whom
was Garrett Lance, exited the vehicle.

            The
young men told Trooper Wachtendorf that there had been a dispute about a female
in which the female’s ex-boyfriend had challenged them to a fight.  When they
arrived at the residence at which the fight was to occur, they had been
ambushed by a number of people with paintball guns.  Upon being hit with
paintballs, the boys left the area in a chaotic fashion, and one of the tires
on the pickup blew out.  To Trooper Wachtendorf, the boys did not seem angry or
upset but rather excited.  Trooper Wachtendorf did not feel threatened by the
situation.  The boys told him that they wanted to file a complaint, so Trooper
Wachtendorf called the City of Rosebud Police Department[1]
to start the complaint process.

            Appellant,
a City of Rosebud police officer, arrived, and Trooper Wachtendorf explained
the situation to him.  Trooper Wachtendorf and Appellant then walked to where
the boys were, and the tenor of the scene changed.  Appellant appeared to be
agitated and was trying to intimidate the young men.  The trooper did not feel
it was appropriate and turned on his in-car video equipment.  Appellant began
chastising Lance, who did not “take too well to it.”  Trooper Wachtendorf’s
video shows Appellant yelling at Lance, telling him he is wrong.  The two of
them engaged in a tense conversation for about two minutes, and then Appellant told
Lance to get his hands out of his pockets.  Appellant then pushed Lance against
the pickup and held him against the vehicle, telling him to comply and holding
his hand to Lance’s throat. In a few seconds, Lance fell to the ground. Lance
did not seek medical treatment and suffered no permanent damage as a result of
the incident.

            In
his first issue, Appellant contends that the evidence is insufficient to
support the jury’s verdict.  In a review of the legal sufficiency of the
evidence, we determine whether any rational finder of fact could have found the
existence of the elements of the offense after viewing all of the evidence in a
light most favorable to the verdict.  Jackson v. Virginia, 443 U.S. 307,
319  (1979); Gibbs v. State, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991).  The appellate court’s duty is not to sit as a thirteenth juror reweighing
the evidence or deciding whether it believes the evidence established the
elements in question beyond a reasonable doubt.  Gibbs, 819 S.W.2d at
834; Blankenship v. State, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988).

            Appellant
was found guilty of intentionally and knowingly causing serious bodily injury
to Lance.  Serious bodily injury is defined as “bodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.”  Tex. Penal Code Ann.
§ 1.07(46) (West Supp. 2011).  Appellant contends there was no evidence to show
Lance sustained serious bodily injury.

            Dr.
Karlan Downing, an emergency room physician, reviewed the video of the
incident.   In her opinion, Lance lost consciousness during the episode.  Dr.
Downing also opined that the choking of someone creates a substantial risk of
death because it carries the risk of breaking the hyoid bone, which helps
stabilize the windpipe and voicebox.  If it is broken, the person loses some of
the ability to maintain his airway.  Additionally, Dr. Downing testified that
the loss of consciousness carries the risk of brain damage.  Additionally,
there are several vital arteries and veins that run through the neck.  Choking
runs the risk of compression of these arteries and veins, which could affect
circulation of blood to the brain.  In her opinion, the choking of Lance in
this case carried a substantial risk of death.  While it is true, as Appellant
suggests, that medical testimony is not necessarily controlling, it has been
utilized by other Texas courts to illustrate that choking is serious bodily
injury.  See Kaufman v. State, No. 13-01-00507-CR, 2002 WL
34230974, at *1–2 (Tex. App.—Corpus Christi Aug. 22, 2002, no pet.) (not
designated for publication).

            Rick
Bates, a staff sergeant with the Waco Police Department, was a staff trainer
for the department, teaching firearms, defense tactics, and driving.  Sergeant
Bates opined that deadly force is the type of force that, in its use, is going
to cause death or serious bodily injury.  In his opinion, choking was deadly
force; he was never trained in choking as a tactic in his police officer
training.  Sergeant Bates was also a former member of the U.S. Marine Corps and
had been trained in choking when he was a marine as a tactic to kill.

            Additionally,
there is precedent from this court that directly addresses the issue of whether
choking constitutes serious bodily injury.  In Akbar v. State, 660
S.W.2d 834 (Tex. App.—Eastland 1983, pet. ref’d), the defendant wrapped a towel
around the neck of the victim and choked her until she “almost” blacked out.  660
S.W.2d at 835–36.  The court found that it was common knowledge that the throat
was a particularly vulnerable area of the body and that the jury could have drawn
the inference of serious bodily injury from the fact that the victim almost
blacked out.  Id. at 836.   In Akbar, there was no medical
testimony on the question of serious bodily injury.  Id.

            Appellant
contends that Akbar is not applicable to this case because the court was
actually addressing the issue of “strangling,” not choking.  We disagree.  The
court quoted the definition of strangling as “to compress the windpipe of until
death” and to “choke to death by compressing the throat with or as if with a
hand or rope.”  Id.  The victim in Akbar was not killed so she
could not have been “strangled” as the court was defining the term.  The court
was using the term as an illustration of the danger of choking someone.  Viewing
the evidence in a light most favorable to the verdict, we hold that the
evidence is sufficient to show that Appellant did cause serious bodily injury
to the victim by choking him to the point of unconsciousness.  See also Chavez
v. State, No. 04-07-00741-CR, 2008 WL 5050549, at * 2 (Tex. App.—San
Antonio Nov. 26, 2008, pet. ref’d) (mem. op., not designated for publication)
(choking of victim to unconsciousness is serious bodily injury); In re J.A.P.,
No. 03-02-00112-CV, 2002 WL 31317256, at *3 (Tex. App.—Austin Oct. 17, 2002, no
pet.) (not designated for publication) (victim choked in throat for seven
seconds and blacked out, and Akbar cited in holding that choking created
a substantial risk of death and, thus, was serious bodily injury); Kaufman, 2002
WL 34230974, at * 2–3 (choking of victim created substantial risk of death). 
Appellant’s first issue is overruled.

            In
his second issue, Appellant contends that the evidence was insufficient to show
that Appellant had the intent to cause serious bodily injury.  Intent is most
often shown through circumstantial evidence surrounding the crime, rather than
direct evidence.  Christensen v. State, 240 S.W.3d 25, 32 (Tex. App.—Houston
[1st Dist.] 2007, pet. ref’d).  A jury can infer intent from the acts, words,
and conduct of the defendant and any other facts that tend to prove its
existence.  Id.  Given the direct evidence of Appellant’s actions, we
find that the evidence is sufficient to show that Appellant had the intent to
cause serious bodily injury.  Appellant’s second issue is overruled.

            In
his third issue, Appellant contends that the State asked an improper commitment
question of the panel members during voir dire.  In its examination of the
panel, the State explained to the jury the definition of bodily injury and
explained the scenarios that would make a bodily injury serious bodily injury. 
Then, the State asked a venireman if he thought choking could meet the definition
of bodily injury that “creates a substantial risk of death.”  The venireman answered,
“Yes,” agreeing with the State’s comment that the neck was “a vital part of the
body” and further stating that choking could cause “serious injury.”  Then, the
following colloquy took place:

[PROSECUTOR]: And it could.  But what if it doesn’t cause a
serious injury?  What if it didn’t actually cause a serious bodily injury? 
Didn’t require hospitalization, didn’t require medical attention.  Could it
still be?

 

[DEFENSE COUNSEL]: Your Honor, I’m going to object to this
line of questioning.  It’s asking for a commitment by members of the panel.

 

THE COURT:  Overruled.  

 

[PROSECUTOR]:  I’m asking for your opinion and how you feel
about that, okay?

 

If it’s one that doesn’t require medical attention or even
require hospitalization, do you see how that that might could qualify --

 

. . . .

 

PROSECUTOR:  -- as serious bodily injury?

 

[VENIREMAN]:  Yes.  

 

The
State argues that Appellant did not preserve error on his contention that this
was a commitment question.

            Assuming Appellant did preserve error on the question to
Mr. Lewis, Appellant could not be harmed by the question of this venireman. 
This is because Mr. Lewis was challenged for cause and excused without
objection on an unrelated matter.  See Tex.
R. App. P. 44.2.

            Appellant did not preserve error on the
questions to the remaining panel members. In order to preserve error for
appellate review, a party must make a timely request or objection, stating the
grounds for the ruling desired from the court.  Tex. R. App. P. 33.1(a).  This request or objection must be
made at the earliest opportunity.  Montgomery v.
State, 198 S.W.3d 67, 74 (Tex. App.—Fort
Worth 2006, pet. ref’d).  Appellant concedes that he did not object to the
alleged commitment questions asked of other panel members but maintains that he
lodged a “running” objection to this line of questioning.  However, Appellant only
made a “running” objection to comments on a chart the State was using to
illustrate the definitions of injury and serious bodily injury.  As the
objection did not comport with the complaint Appellant is making on appeal, he
did not preserve error with this objection.  See Rezac v.
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (objection on one basis will not support different contention
on appeal).  Moreover, Appellant’s objection was a general objection that did
not inform the trial court of the substance of his complaint and, thus, did not
preserve any contention for appeal. See Hackbarth v. State,
617 S.W.2d 944, 947 (Tex. Crim. App. 1981).  Appellant’s third issue is
overruled.

            The
judgment of the trial court is affirmed.

            Wright,
C.J., concurs in the result.

 

 

ERIC KALENAK

JUSTICE

 

June 7, 2012

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]Trooper
Wachtendorf later learned that the incident happened outside the city limits.