Opinion filed June 7, 2012



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00308-CR

_____

## JACK MAXWELL COMEAUX, JR., Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 82nd District Court**

**Falls County, Texas**

**Trial Court Cause No. 8707**

### M E M O R A N D U M   O P I N I O N

The grand jury indicted Jack Maxwell Comeaux, Jr. for one count of aggravated assault against Garrett Lance. Appellant pleaded not guilty and was tried before a jury, which found him guilty. The trial court assessed a punishment of fifteen years in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Jeff Wachtendorf was a trooper with the Texas Department of Public Safety stationed in Falls County, Texas, in 2009. While on patrol in the county in the evening on January 17, 2009, he received "a call of a vehicle that was on three tires doing donuts . . . in the middle of the road." Trooper Wachtendorf eventually found a Ford Ranger on the side of the road with the left

front tire missing. When Trooper Wachtendorf parked behind the pickup, four young men, one of whom was Garrett Lance, exited the vehicle.

The young men told Trooper Wachtendorf that there had been a dispute about a female in which the female's ex-boyfriend had challenged them to a fight. When they arrived at the residence at which the fight was to occur, they had been ambushed by a number of people with paintball guns. Upon being hit with paintballs, the boys left the area in a chaotic fashion, and one of the tires on the pickup blew out. To Trooper Wachtendorf, the boys did not seem angry or upset but rather excited. Trooper Wachtendorf did not feel threatened by the situation. The boys told him that they wanted to file a complaint, so Trooper Wachtendorf called the City of Rosebud Police Department[1] to start the complaint process.

Appellant, a City of Rosebud police officer, arrived, and Trooper Wachtendorf explained the situation to him. Trooper Wachtendorf and Appellant then walked to where the boys were, and the tenor of the scene changed. Appellant appeared to be agitated and was trying to intimidate the young men. The trooper did not feel it was appropriate and turned on his in-car video equipment. Appellant began chastising Lance, who did not "take too well to it." Trooper Wachtendorf's video shows Appellant yelling at Lance, telling him he is wrong. The two of them engaged in a tense conversation for about two minutes, and then Appellant told Lance to get his hands out of his pockets. Appellant then pushed Lance against the pickup and held him against the vehicle, telling him to comply and holding his hand to Lance's throat. In a few seconds, Lance fell to the ground. Lance did not seek medical treatment and suffered no permanent damage as a result of the incident.

In his first issue, Appellant contends that the evidence is insufficient to support the jury's verdict. In a review of the legal sufficiency of the evidence, we determine whether any rational finder of fact could have found the existence of the elements of the offense after viewing all of the evidence in a light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibbs v. State*, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991). The appellate court's duty is not to sit as a thirteenth juror reweighing the evidence or deciding whether it believes the evidence established the elements in question beyond a reasonable doubt. *Gibbs*, 819 S.W.2d at 834; *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988).

---

[1]Trooper Wachtendorf later learned that the incident happened outside the city limits.

Appellant was found guilty of intentionally and knowingly causing serious bodily injury to Lance. Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(46) (West Supp. 2011). Appellant contends there was no evidence to show Lance sustained serious bodily injury.

Dr. Karlan Downing, an emergency room physician, reviewed the video of the incident. In her opinion, Lance lost consciousness during the episode. Dr. Downing also opined that the choking of someone creates a substantial risk of death because it carries the risk of breaking the hyoid bone, which helps stabilize the windpipe and voicebox. If it is broken, the person loses some of the ability to maintain his airway. Additionally, Dr. Downing testified that the loss of consciousness carries the risk of brain damage. Additionally, there are several vital arteries and veins that run through the neck. Choking runs the risk of compression of these arteries and veins, which could affect circulation of blood to the brain. In her opinion, the choking of Lance in this case carried a substantial risk of death. While it is true, as Appellant suggests, that medical testimony is not necessarily controlling, it has been utilized by other Texas courts to illustrate that choking is serious bodily injury. *See Kaufman v. State*, No. 13-01-00507-CR, 2002 WL 34230974, at *1–2 (Tex. App.—Corpus Christi Aug. 22, 2002, no pet.) (not designated for publication).

Rick Bates, a staff sergeant with the Waco Police Department, was a staff trainer for the department, teaching firearms, defense tactics, and driving. Sergeant Bates opined that deadly force is the type of force that, in its use, is going to cause death or serious bodily injury. In his opinion, choking was deadly force; he was never trained in choking as a tactic in his police officer training. Sergeant Bates was also a former member of the U.S. Marine Corps and had been trained in choking when he was a marine as a tactic to kill.

Additionally, there is precedent from this court that directly addresses the issue of whether choking constitutes serious bodily injury. In *Akbar v. State*, 660 S.W.2d 834 (Tex. App.—Eastland 1983, pet. ref'd), the defendant wrapped a towel around the neck of the victim and choked her until she "almost" blacked out. 660 S.W.2d at 835–36. The court found that it was common knowledge that the throat was a particularly vulnerable area of the body and that the jury could have drawn the inference of serious bodily injury from the fact that the victim

3

almost blacked out. *Id.* at 836. In *Akbar*, there was no medical testimony on the question of serious bodily injury. *Id.*

Appellant contends that *Akbar* is not applicable to this case because the court was actually addressing the issue of "strangling," not choking. We disagree. The court quoted the definition of strangling as "to compress the windpipe of until death" and to "choke to death by compressing the throat with or as if with a hand or rope." *Id.* The victim in *Akbar* was not killed so she could not have been "strangled" as the court was defining the term. The court was using the term as an illustration of the danger of choking someone. Viewing the evidence in a light most favorable to the verdict, we hold that the evidence is sufficient to show that Appellant did cause serious bodily injury to the victim by choking him to the point of unconsciousness. *See also Chavez v. State*, No. 04-07-00741-CR, 2008 WL 5050549, at * 2 (Tex. App.—San Antonio Nov. 26, 2008, pet. ref'd) (mem. op., not designated for publication) (choking of victim to unconsciousness is serious bodily injury); *In re J.A.P.*, No. 03-02-00112-CV, 2002 WL 31317256, at *3 (Tex. App.—Austin Oct. 17, 2002, no pet.) (not designated for publication) (victim choked in throat for seven seconds and blacked out, and *Akbar* cited in holding that choking created a substantial risk of death and, thus, was serious bodily injury); *Kaufman,* 2002 WL 34230974, at * 2–3 (choking of victim created substantial risk of death). Appellant's first issue is overruled.

In his second issue, Appellant contends that the evidence was insufficient to show that Appellant had the intent to cause serious bodily injury. Intent is most often shown through circumstantial evidence surrounding the crime, rather than direct evidence. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). A jury can infer intent from the acts, words, and conduct of the defendant and any other facts that tend to prove its existence. *Id.* Given the direct evidence of Appellant's actions, we find that the evidence is sufficient to show that Appellant had the intent to cause serious bodily injury. Appellant's second issue is overruled.

In his third issue, Appellant contends that the State asked an improper commitment question of the panel members during voir dire. In its examination of the panel, the State explained to the jury the definition of bodily injury and explained the scenarios that would make a bodily injury serious bodily injury. Then, the State asked a venireman if he thought choking

4

could meet the definition of bodily injury that "creates a substantial risk of death." The venireman answered, "Yes," agreeing with the State's comment that the neck was "a vital part of the body" and further stating that choking could cause "serious injury." Then, the following colloquy took place:

> [PROSECUTOR]: And it could. But what if it doesn't cause a serious injury? What if it didn't actually cause a serious bodily injury? Didn't require hospitalization, didn't require medical attention. Could it still be?

> [DEFENSE COUNSEL]: Your Honor, I'm going to object to this line of questioning. It's asking for a commitment by members of the panel.

> THE COURT: Overruled.

> [PROSECUTOR]: I'm asking for your opinion and how you feel about that, okay?

> If it's one that doesn't require medical attention or even require hospitalization, do you see how that that might could qualify --

> . . . .

> PROSECUTOR: -- as serious bodily injury?

> [VENIREMAN]: Yes.

The State argues that Appellant did not preserve error on his contention that this was a commitment question.

Assuming Appellant did preserve error on the question to Mr. Lewis, Appellant could not be harmed by the question of this venireman. This is because Mr. Lewis was challenged for cause and excused without objection on an unrelated matter. *See* TEX. R. APP. P. 44.2.

Appellant did not preserve error on the questions to the remaining panel members. In order to preserve error for appellate review, a party must make a timely request or objection, stating the grounds for the ruling desired from the court. TEX. R. APP. P. 33.1(a). This request or objection must be made at the earliest opportunity. *Montgomery v. State*, 198 S.W.3d 67, 74 (Tex. App.—Fort Worth 2006, pet. ref'd). Appellant concedes that he did not object to the alleged commitment questions asked of other panel members but maintains that he lodged a "running" objection to this line of questioning. However, Appellant only made a "running"

objection to comments on a chart the State was using to illustrate the definitions of injury and serious bodily injury. As the objection did not comport with the complaint Appellant is making on appeal, he did not preserve error with this objection. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (objection on one basis will not support different contention on appeal). Moreover, Appellant's objection was a general objection that did not inform the trial court of the substance of his complaint and, thus, did not preserve any contention for appeal. *See Hackbarth v. State*, 617 S.W.2d 944, 947 (Tex. Crim. App. 1981). Appellant's third issue is overruled.

The judgment of the trial court is affirmed.

Wright, C.J., concurs in the result.


ERIC KALENAK
JUSTICE


June 7, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

6