

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00586-CV

Hamzah **ANJUM**,
Appellant

v.

Zeenat **SHAMS-UL-QAMAR**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-24053
Honorable Laura Salinas, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Sandee Bryan Marion, Chief Justice (Ret.)[2]

Delivered and Filed: September 27, 2023

AFFIRMED

Appellant Hamzah Anjum appeals a final protective order entered in favor of appellee Zeenat Shams-Ul-Qamar. Anjum argues the trial court erred by not filing findings of fact and conclusions of law, and the evidence is legally and factually insufficient to support the protective order's findings. We affirm the protective order.

---

[1] Although the Honorable Laura Salinas signed the underlying final divorce decree, the Honorable Cynthia Maria Chapa signed the challenged final protective order.

[2] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

**BACKGROUND**

Anjum filed for divorce from Shams-Ul-Qamar.  At the time of filing, the couple had been married over three years and had a one-year-old daughter.  Shams-Ul-Qamar answered, filed a counterpetition for divorce, and sought a protective order on behalf of herself and her daughter.  The trial court granted Shams-Ul-Qamar an ex parte temporary protective order and set the matter for a final hearing.

The trial court held a six-day final hearing on Shams-Ul-Qamar's application for a protective order.  It heard testimony from multiple witnesses, including Anjum and Shams-Ul-Qamar, and reviewed photos of the couple, including a photo of Shams-Ul-Qamar with a bruise on her arm.  It ultimately signed a final protective order in favor of Shams-Ul-Qamar.  In its order, the trial court specifically found Anjum had committed family violence, was likely to commit family violence, and caused Shams-Ul-Qamar serious bodily injury.  The trial court further rendered the protective order for a period of eighteen years until March 12, 2039.

Six months later, the trial court signed the final divorce decree.  Anjum then filed a request for findings of fact and conclusions of law with respect to the final protective order.  The trial court did not issue any findings; Anjum thereafter filed a "Notice of Past Due Findings of Fact and Conclusions of Law."  Other than the findings contained in the final protective order, the trial court did not make any additional findings or conclusions.  Anjum now appeals.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

We begin with Anjum's argument asserting the trial court erred because it did not issue findings of fact and conclusions of law.  According to Anjum, the trial court's failure to issue findings and conclusions constituted harmful error because it prevented him from knowing the basis of the trial court's order.  He requests we abate the appeal and remand the case to the trial court to issue findings and conclusions.

In general, if a party properly requests findings of fact and conclusions of law, the trial court has a mandatory duty to issue them. *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ) (citing *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)); *see also* TEX. R. CIV. P. 296, 297. A trial court's failure to issue findings in response to a timely and proper request is presumed harmful unless the record before us affirmatively demonstrates the complaining party has suffered no injury. *Ad Villarai, LLC v. Pak*, 519 S.W.3d 132, 135 (Tex. 2017). "An appellant is harmed if there are two or more possible grounds on which the [trial] court could have ruled and the appellant is left to guess the basis for the trial court's ruling." *Zieba*, 928 S.W.2d at 786. When the trial court's failure is harmful, we must abate the appeal and direct the trial court to issue findings and conclusions. *Ad Villarai, LLC*, 519 S.W.3d at 136.

With respect to a protective order, section 85.001 of the Texas Family Code requires the trial court to find whether "family violence has occurred" and whether "family violence is likely to occur in the future." TEX. FAM. CODE § 85.001(a).[3] If the protective order lasts longer than two years, section 85.025(a-1) of the Code further requires the trial court to include in the order a finding the respondent has either "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense," "caused serious bodily injury to the applicant or a member of the applicant's family or household," or "was the subject of two or more previous protective orders rendered." *Id.* § 85.025(a-1).

Here, the final protective order included the following findings: "family violence has occurred," "family violence is likely to occur in the future," "Respondent, Hamzah Anjum, has

---

[3] The statute was amended in 2023, and effective September 1, 2023, the trial court is no longer required to determine whether "family violence is likely to occur in the future."

committed family violence," and "Respondent caused serious bodily injury to the Applicant." By including the findings mandated by sections 85.001 and 85.025(a-1), it was not necessary for the trial court to make additional findings. *See Phillips v. Phillips*, 651 S.W.3d 112, 119–20 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (holding trial court was not required to issue findings of fact and conclusions of law in response to request because final protective order contained findings mandated by Family Code); *Peña v. Garza*, 61 S.W.3d 529, 531–32 (Tex. App.—San Antonio 2001, no pet.) (holding trial court did not err in not filing additional findings of fact and conclusions of law because statutory findings recited in protective order). Accordingly, we overrule Anjum's issue concerning the trial court's failure to issue findings and conclusions.

### SUFFICIENCY OF THE EVIDENCE

Anjum next asserts the evidence is factually and legally insufficient to support the final protective order's findings family violence has occurred, family violence is likely to occur in the future, and he caused serious bodily injury to Shams-Ul-Qamar. Anjum contends Shams-Ul-Qamar's testimony and photo of a "small single bruise" on her arm was insufficient to support the trial court's findings. According to Anjum, Shams-Ul-Qamar's testimony was conclusory and uncorroborated, and there was no evidence he caused her serious bodily injury as defined by the Texas Penal Code.

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823–24 (Tex. 2005); *Yang v. Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 807, 827; *Yang*, 629 S.W.3d at 670. We will sustain a legal sufficiency challenge only when the record shows: (1) a complete absence of evidence of a vital fact; (2) rules of law or

evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. If more than a scintilla of evidence exists, it is legally sufficient. *Yang*, 629 S.W.3d at 670 (citing *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005)). More than a scintilla of evidence exists when the evidence supporting the finding rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

To review a factual-sufficiency challenge, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged findings. *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We will overturn a finding only when the evidence is so weak or contrary to the overwhelming weight of the evidence the finding is clearly wrong and unjust. *Id*. (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The factfinder is the sole judge of the weight and credibility of the witnesses' testimony; we may not substitute our judgment for the trial court's judgment simply because we might reach a different conclusion. *City of Keller*, 168 S.W.3d at 819, 822; *Boyd*, 425 S.W.3d at 429.

As indicated above, under the Family Code, a trial court shall enter a protective order if, at the close of a hearing on the application, the court finds family violence has occurred and is likely to occur in the future. TEX. FAM. CODE §§ 81.001, 85.001. "Family violence" means an act by a member of a family or household against another member of the family or household intended to result in physical harm, bodily injury, assault, or sexual assault or is a threat reasonably placing the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but does not include defensive measures to protect oneself. TEX. FAM. CODE § 71.004(1). Evidence of a single act of family violence can support a finding of future family violence. *Vinzant v. Helduser*,

No. 01-21-00633-CV, 2022 WL 3588756, at *7 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.); *Boyd*, 425 S.W.3d at 432 ("The statutory language . . . does not require that a likelihood finding be based on more than one act of family violence."). And, evidence a person has engaged in a pattern of past threats or violent conduct will also support a finding family violence is likely to occur in the future. *In re Epperson*, 213 S.W.3d 541, 543–44 (Tex. App.—Texarkana 2007, no pet.).

In this case, Shams-Ul-Qamar testified Anjum began having what she described as "violent episodes" four months after they married. She stated during these episodes, he would yell and throw items at her, making her scared; he would also beat and choke her. She stated the first time he attacked her, he "started yelling and he just came up and he moved all the stuff from the table. And he took one of the stuff and hit me. And then he started like shivering and he came to just get my neck. And I was really scared. I didn't know what's going on, but I tried to escape from there and I just locked myself in." She testified she started to keep her distance from him when he became angry, but sometimes he would come close to her and begin choking her. According to Shams-Ul-Qamar, Anjum had tried to choke her four times during their marriage, and despite the fact the couple lived with Anjum's parents, no one would help her.

She also testified after their daughter was born, Anjum's behavior became worse. He was angrier, and he began "forcing" her to have sex with him even though she told him no. She testified she would try to dissuade him, but he would "start raping" her by holding her down and forcing her to have sex. Shams-Ul-Qamar also testified due to Anjum's violent outbursts, the couple had to leave Anjum's parent's house and find an apartment. She stated she lived in the apartment "for maybe 15, 16 days," and Anjum often left her there alone with the baby. She testified the apartment had very little furniture, and he bought her "very limited grocer[ies.]" When asked about the day she decided to leave, she testified he was having a violent episode at the apartment

and tried to choke her, causing her to lock herself and her daughter in the bathroom. Eventually, Anjum's mother arrived, and Anjum left with her. Shams-Ul-Qamar testified she then contacted a shelter, where she took refuge for herself and her daughter. She stated while at the shelter, Anjum tried to trace her location by sending her third-party text messages with links. In addition to this testimony, Shams-Ul-Qamar offered, and the trial court admitted, photos of the couple, including a photo showing a bruise on her left forearm, and screenshots of the third-party text messages attempting to track her location.

The trial court also heard testimony from Anjum, who testified he has epilepsy, which causes him to have seizures sometimes when he is under stress. Anjum testified he takes medication and does not regularly have seizures—only when Shams-Ul-Qamar "starts giving me problems." He testified he was not violent, and neither Shams-Ul-Qamar nor his daughter should be concerned about their safety around him. Anjum's father also testified Anjum was not violent. He stated he lived in the house with the couple, and he never saw Anjum mistreat Shams-Ul-Qamar. Instead, he saw Shams-Ul-Qamar treat him and his wife disrespectfully.

When viewing this evidence under the appropriate standards of review, we conclude it is legally and factually sufficient to support the trial court's findings "family violence has occurred" and "family violence is likely to occur in the future." *See City of Keller*, 168 S.W.3d at 810, 822–24; *Boyd*, 425 S.W.3d at 429. Here, the trial court heard testimony from Shams-Ul-Qamar specifically describing Anjum's violent episodes and how he choked and sexually assaulted her multiple times. Contrary to Anjum's assertion that this testimony is conclusory, Shams-Ul-Qamar provided the trial court with details of Anjum's actions by specifying how he would throw items at her, choke her, and force her to have sex with him by holding her down.

Moreover, the trial court "did not need someone to testify directly to the likelihood of future violence" because it could have reasonably inferred Anjum would continue to commit these acts

based on his pattern of past violent episodes coupled with his ongoing attempts to locate Shams-Ul-Qamar after she left him. *See Johnson v. Garcia*, No. 14-18-00397-CV, 2019 WL 4021886, at *3–4 (Tex. App.—Houston [14th Dist.] Aug. 27, 2019, no pet.) (mem. op.) (overruling argument testimony was conclusory because trial court could infer from evidence of past family violence that future violence is likely to occur); *see also Boyd*, 425 S.W.3d at 432 (reasoning Boyd's continual harassment of applicant via text messages combined with past episodes of violence supported inference Boyd would commit family violence acts in future). To the extent Anjum contends Sham-Ul-Qamar's testimony was uncorroborated, Anjum cites no authority requiring corroboration of an applicant's testimony, and we have previously held an applicant's testimony alone is sufficient to support findings in a protective order. *See Lummus v. Lummus*, No. 04-22-00350-CV, 2023 WL 242730, at *3 (Tex. App.—San Antonio Jan. 18, 2023, no pet.) (mem. op.).

Finally, Anjum challenges the sufficiency of the evidence supporting the trial court's finding he caused Shams-Ul-Qamar serious bodily injury. For support, he relies on *Yang v. Cao*, where the First Court of Appeals held the evidence was insufficient to support a lifetime protective order based on serious bodily injury because there was no evidence the applicant suffered a fractured nose. *See* 629 S.W.3d at 670–71.

The Family Code does not define the phrase "serious bodily injury," but the Texas Penal Code defines the phrase as "injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE § 1.07(46); *see Yang*, 629 S.W.3d at 670 (applying definition of "serious bodily injury" in Texas Penal Code § 1.07(46)). In *Yang*, the applicant testified Lei Yang punched her in the face and continued punching her, causing her to sustain a swollen right eye and nose. 629 S.W.3d at 670. When asked whether she incurred a fractured

nose, the applicant answered negatively, and the court held evidence of a black eye and swollen nose was legally insufficient to show Yang caused the applicant serious bodily injury. *Id*. at 671.

Unlike the applicant in *Yang*, Shams-Ul-Qamar testified Anjum choked her several times. Texas courts have consistently recognized choking as an act that can create a substantial risk of death regardless of whether the victim loses complete consciousness. *See Comeaux v. State*, No. 11-10-00308-CR, 2012 WL 2045950, at *2 (Tex. App.—Eastland June 7, 2012, pet. ref'd) (mem. op.) (providing medical testimony has been utilized by other Texas courts to illustrate that choking is serious bodily injury); *In re J.A.P.*, No. 03-02-00112-CV, 2002 WL 31317256, at *3 (Tex. App.—Austin Oct. 17, 2002, no pet.) (mem. op.) (highlighting expert testimony is not required to show choking causes substantial risk of death); *Akbar v. State*, 660 S.W.2d 834, 836 (Tex. App.—Eastland 1983, writ ref'd) (emphasizing it is common knowledge choking compresses the throat, which is a vulnerable part of the body); *see also Chavez v. State*, No. 04-07-00741-CR, 2008 WL 5050549, at *3 (Tex. App.—San Antonio Nov. 26, 2008, pet. ref'd) (mem. op.) (providing "several of our sister courts have found that choking to a point of unconsciousness meets the requirement for 'substantial risk of death'"). Thus, when viewing Shams-Ul-Qamar's testimony under the appropriate standards of review, we conclude the trial court could have reasonably inferred Anjum's action of choking Shams-Ul-Qamar created a substantial risk of death, supporting the trial court's finding he caused her serious bodily injury. *See Comeaux*, 2012 WL 2045950, at *2 ("Viewing the evidence in a light most favorable to the verdict, we hold that the evidence is sufficient to show that Appellant did cause serious bodily injury to the victim by choking him to the point of unconsciousness."); *J.A.P.*, 2002 WL 31317256 at *3 ("Viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found beyond a reasonable doubt that J.A.P.'s act of choking the complainant created a substantial risk of death."). We further conclude the evidence is not so weak as to make the trial court's serious

bodily injury finding clearly wrong or unjust. *See Boyd*, 425 S.W.3d at 429. Accordingly, because we conclude the evidence is legally and factually sufficient to support the trial court's findings, we overrule each of Anjum's sufficiency challenges.

CONCLUSION

We affirm the trial court's final protective order.

Luz Elena D. Chapa, Justice